1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   AURORA REGINO,                      No.  2:23-cv-00032-JAM-DMC

12            Plaintiff,

13      v.                               **ORDER DENYING PLAINTIFF'S MOTION
                                         FOR PRELIMINARY INJUNCTION**
14   KELLY STALEY, ET AL.,

15            Defendants.

16

17        Aurora Regino ("Plaintiff") seeks a preliminary injunction

18   against Chico Unified School District Superintendent Kelly Staley

19   and school board members Caitlin Dalby, Rebecca Konkin, Tom

20   Lando, Eileen Robinson, and Matt Tennis ("Defendants") in their

21   official capacities. Plaintiff asks this Court to enjoin

22   enforcement of school district regulation AR 5145.3, which

23   broadly covers nondiscrimination and harassment as it applies to

24   the school district's transgender students.  See Mot. for

25   Preliminary Injunction ("MPI"), ECF No. 18.  Defendants oppose

26   the motion.  See Opp'n, ECF No. 21.  Plaintiff replied.  See

27   Reply, ECF No. 27.

28        For the reasons set forth below, the Court DENIES

                                  1

1   Plaintiff's motion.

2          I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

3          Plaintiff contends that the Chico United School District, in

4   which both of her children, A.S. and C.S., are students, operates

5   a policy, AR 5145.3 (the "Regulation"), that (1) permits school

6   personnel to socially transition students expressing a

7   transgender identity and (2) prohibits school personnel from

8   informing a student's parents of this change unless the student

9   expressly authorizes them to do so.  MPI at 5-6.  During the

10  2021-22 school year, Plaintiff's child, A.S., then a student at

11  Sierra View Elementary School, expressed feelings of gender

12  dysphoria to her school counselor, Mandi Robinson, specifically

13  that she identified as a boy.  Id. at 6.  After a couple of

14  subsequent counseling sessions, Plaintiff alleges that A.S.'s

15  counselor began socially transitioning A.S. by informing her

16  teachers that she was to be called by her new name and referred

17  to by male pronouns.  Id. at 7.  School personnel did not

18  disclose these developments to Plaintiff; Plaintiff further

19  alleges that Robinson actively discouraged A.S. from informing

20  Plaintiff and instead advised her to disclose her new identity to

21  other family members first.  Id.  Robinson also did not suggest

22  that A.S. discuss her gender dysphoria with a medical

23  professional.  Id.  On April 8, 2022, A.S. informed her

24  grandmother of her new gender identity, who then informed

25  Plaintiff the same day.  Id.  Plaintiff then spent the following

26  months in contact with school district personnel to express her

27  concerns about the Regulation and advocated for the school

28  district to change it.  Id. at 8.  Plaintiff alleges that

                                    2

1   district personnel, including Defendants, dismissed her concerns

2   and stated that state law mandated the Regulation.  Id. at 8.

3   A.S. currently does not express feelings of gender dysphoria and

4   now identifies as a girl again and is currently in counseling for

5   depression and anxiety.  Id.

6       On January 6, 2023, Plaintiff filed her complaint against

7   Defendants alleging four causes of action under 42 U.S.C. § 1983:

8   two facial challenges to the Regulation under substantive and

9   procedural due process; and two as-applied challenges to the

10  Regulation under substantive and procedural due process.  See

11  Compl.  A couple of weeks later, Plaintiff filed the operative

12  motion for preliminary injunction seeking to enjoin Defendants

13  and all district employees from: (1) socially transitioning

14  current students without obtaining informed consent from the

15  students' parents or guardians; (2) not obtaining informed

16  consent from the parents or guardians of all current students who

17  have previously been socially transitioned or are currently being

18  socially transitioned; (3) socially transitioning Plaintiff's

19  children without her informed consent; and (4) not obtaining

20  Plaintiff's informed consent if her daughters have been socially

21  transitioned in the past or are still being socially

22  transitioned.  See MPI.

23                     II.   EVIDENTIARY ISSUES

24      A.   Judicial Notice

25      Defendants request the Court take judicial notice of three

26  exhibits.  See Request for Judicial Notice, ECF No. 21.  Exhibit

27  A is a publication by the California Department of Education

28  outlining the frequently asked questions regarding California's

1    School Success and Opportunity Act (AB 1266), Exhibit B is a

2    publication by the California School Boards Association detailing

3    a sample anti-harassment regulation, and Exhibit C is Chico

4    Unified School District's Administrative Regulation 5145.3 on

5    antidiscrimination and harassment.  Id. at 2.  All three exhibits

6    constitute government records and are, therefore, proper subjects

7    for judicial notice.  Anderson v. Holder, 673 F.3d 1089, 1094

8    n. 1 (9th Cir. 2012); Daniels-Hall v. National Educ. Ass'n., 629

9    F.3d 992, 998 (9th Cir. 2010).

10        B.   Expert Affidavit

11        Defendants object to Plaintiff's submission of Dr. Stephen

12   B. Levine's affidavit in consideration of her motion for

13   preliminary injunction.  See Defendants' Objections to Expert

14   Affidavit, ECF No. 21.  Plaintiff responds that Dr. Levin's

15   affidavit qualifies as an expert affidavit under Federal Rule of

16   Evidence (FRE) 702 and that Defendants' objection is premature.

17   See Plaintiff's Response to Defendants' Objections to Expert

18   Affidavit, ECF No. 27.  The Court agrees that the affidavit is

19   admissible under FRE 702.

20

21                     III.   OPINION

22        A.   Legal Standard

23        A preliminary injunction is an "extraordinary remedy" that a

24   court may award only "upon a clear showing that the petitioner is

25   entitled to such relief."  Winter v. Natural Resources Defense

26   Counsel, Inc., 555 U.S. 7, 22 (2008).  To obtain a preliminary

27   injunction, a petitioner must demonstrate that: (1) they will

28   likely succeed on the merits, (2) they will suffer irreparable

                                4

1  harm in the absence of preliminary relief, (3) the balance of

2  equities tips in their favor, and (4) an injunction is in the

3  public interest.  Boardman v. Pacific Seafood Group, 822 F.3d

4  1011, 1020 (9th Cir. 2016) (quoting Winter, 555 U.S. at 20).

5      Post-Winter, the Ninth Circuit kept a "sliding scale

6  approach" to preliminary injunctions known as the "serious

7  questions test."  Alliance for the Wild Rockies v. Cottrell, 632

8  F.3d 1127, 1131 (9th Cir. 2011).  Under this approach, a

9  "likelihood" of success is not an absolute requirement.  Id. at

10 1132.  "Rather, serious questions going to the merits and a

11 hardship balance that tips sharply toward the [petitioner] can

12 support issuance of an injunction, assuming the other two

13 elements of the Winter test are also met."  Drakes Bay Oyster Co.

14 v. Jewell, 747 F.3d 1073, 1085 (9th Cir. 2014).

15     B.   Analysis

16          1.   Motion for Preliminary Injunction

17               a.   Factor One: Success on the Merits

18     Plaintiff argues that she is highly likely to succeed on the

19 merits of her claims because AR 5145.3 violates her substantive

20 due process rights as a parent to A.S. as well as her procedural

21 due process rights.  Plaintiff claims that she has a

22 constitutional right to direct the upbringing and education of

23 her children, citing the Supreme Court findings in Parham v.

24 J.R., 442 U.S. 584, 602 (1979) that "parents possess what a child

25 lacks in maturity, experience and capacity for judgement" and the

26 "natural bonds of affection lead parents to act in the best

27 interests of their children."  MPI at 9.  Plaintiff claims that

28 parental authority extends to decisions regarding the health,

1  well-being, and medical treatment of their children; while some

2  parents do not act in the best interest of their children in

3  these areas, Plaintiff argues that it would be unfair for

4  Defendants to completely supersede all parents' authority with

5  respect to handling gender dysphoria and expression in their

6  children.  Id. at 10.  Plaintiff acknowledges that parents do not

7  have a right to dictate the curriculum that is taught to their

8  children in schools but argues that general school policies are

9  subject to judicial review and cannot supersede parental rights.

10  Id. at 10-11.

11     Plaintiff identifies four ways in which the Regulation

12  violates her substantive parental rights: (1) it interferes with

13  her right to control the important decisions in her children's

14  lives; (2) it interferes with her right to control the health,

15  well-being, and medical treatment of her children; (3) it

16  facilitates students being provided substandard and unethical

17  medical care; and (4) it goes against the presumptions of

18  parental fitness and affection.  Id. at 11-15.  Plaintiff further

19  claims that the Regulation does not satisfy strict scrutiny

20  because Defendants cannot demonstrate that student privacy or

21  anti-transgender discrimination are compelling government

22  interests; additionally, the Regulation does not require school

23  personnel to have evidence of parental abuse against a student's

24  transgender identity, so parents are denied information based

25  solely on a student's opinion and not on whether disclosure

26  actually poses a risk to the student's safety.  Id. at 15-16.

27  The Regulation also lacks a lower age limit, so children as young

28  as five years old could be subjected to social transitioning

1  without parental knowledge or consent, which Plaintiff argues

2  does not conform with narrow tailoring under strict scrutiny.

3  Id. at 17.

4      Plaintiff also argues that the Policy is procedurally

5  defective because it interferes with parental rights without

6  requiring the state to conduct a thorough investigation, provide

7  notice to parents, or give parents the opportunity to be heard.

8  Id.

9      As for Plaintiff's substantive due process claims,

10  Defendants argue that students have a privacy right concerning

11  their personal sexual information and that Plaintiff has no

12  legally cognizable right that has been violated; Plaintiff is

13  simply attempting to dictate whether her child and other children

14  are allowed to express their preferred gender identities at

15  school.  Opp'n at 14, 19.  Defendants refer to a recent district

16  court decision out of Maryland that found that minor students

17  have a privacy right to maintain their gender identity a secret

18  from their parents.  Id. at 14-15 (citing John & Jane Parents 1

19  v. Montgomery Cnty. Bd. of Educ., 2022 U.S. Dist. LEXIS 149021

20  (D. Md. Aug. 18, 2022)).  Defendants distinguish the cases cited

21  by Plaintiff, stating that they mainly cover abortion,

22  involuntary separations, or government institutions forcing

23  medically invasive procedures onto minors without parental

24  consent; Defendants argue that none of them are applicable to the

25  circumstances of the instant case.  Id. at 15-17.  Defendants

26  then contend that the instant case is analogous to cases

27  concerning the lack of parental rights regarding the direction of

28  a child's curriculum at school, arguing that Plaintiff cannot

1  contest the Regulation because she decided to send her children

2  to schools in the district, so she is subject to the district's

3  regulations.  Id. 18-19.  Defendants also argue that Plaintiff

4  cannot establish that Defendants have committed any conduct that

5  "shocks the conscience" of the Court because the Regulation

6  complies with state law.  Id. at 19.

7      As for Plaintiff's procedural due process claims, Defendants

8  again argue that Plaintiff has no cognizable right that has been

9  violated by Defendants.  Id. at 19-20.  Therefore, these claims

10 must fail as well.  Id.

11      The Court finds that Plaintiff has failed to demonstrate a

12 likelihood of success on the merits for her claims.  The Court

13 first finds that a determination on Plaintiff's as-applied

14 challenges to the Regulation are premature absent more concrete

15 factual allegations and, thus, cannot satisfy the first Winter

16 factor.  As for Plaintiff's facial challenges, to establish a

17 substantive due process claim under § 1983, a plaintiff must

18 allege that (1) a federal constitutional right was violated and

19 (2) the alleged violation was committed by a person acting under

20 the color of state law.  Long v. Cnty. of Los Angeles, 442 F.3d

21 1178, 1185 (9th Cir. 2006).  To establish a procedural due

22 process claim, a plaintiff must allege that (1) they were

23 deprived of a federal constitutional right and (2) they were

24 denied adequate procedural protections.  Brewster v. Bd. of Educ.

25 of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998).

26 The Supreme Court requires a "careful description of the asserted

27 liberty interest" that has been violated.  Washington v.

28 Glucksberg, 521 U.S. 702, 720, 117 S. Ct. 2258, 2268, 138 L. Ed.

1   2d 772 (1997).  In the instant case, Plaintiff has failed to

2   provide any controlling authority to suggest that the established

3   right of parents to direct the upbringing of their children

4   extends to the circumstances of this case.  While the cases cited

5   by Plaintiff refer to the generally held presumptions that

6   parents act in the best interest of children and help compensate

7   for their children's lack of maturity and experience when dealing

8   with intimate and health related decisions, as noted above,

9   Plaintiff's cases are restricted to abortion, commitments to

10  mental institutions, involuntary separation by the state, and

11  forced, physically invasive testing by the state on children

12  without parental consent.  None of the cases cited by Plaintiff

13  opine on whether the state has an affirmative duty to inform

14  parents of their child's transgender identity nor whether the

15  state must obtain parental consent before socially transitioning

16  a transgender child.  In the absence of the requisite legal and

17  statutory support for Plaintiff's contention that she has a

18  constitutional right that was violated, Plaintiff cannot

19  establish a likelihood of success on the merits for her facial

20  substantive or procedural due process claims.

21      However, the Court notes the novel nature of Plaintiff's

22  claims and finds that Plaintiff has raised serious questions that

23  go to the merits of her case, namely what the bounds of the

24  parental right are to direct the upbringing of one's children as

25  they pertain to a child's gender identity and expression in

26  school.  In fact, Plaintiff's argument in this case has

27  implications beyond gender identity and expression and can be

28  applied to any personal aspect of a child's expression in school

1    that a parent deems relevant to their health and well-being;

2    thus, sexual orientation, the expression of one's racial, ethnic,

3    or cultural identity, and other topics subject to school policies

4    could be subject to legal scrutiny under Plaintiff's theory.  In

5    light of these serious questions, the Court will continue its

6    analysis of the remaining <u>Winter</u> factors with particular

7    consideration of whether the balance of equities tips sharply in

8    favor of Plaintiff, pursuant to <u>Drakes Bay</u>. 747 F.3d at 1085.

9                    b.    <u>Factor Two: Irreparable Harm</u>

10        Plaintiff argues that she has made a strong showing that

11   the Regulation violates her fundamental constitutional rights,

12   which is sufficient to establish irreparable injury.  MPI at 19;

13   <u>Melendres v. Arpaio</u>, 695 F.3d 990, 1002 (9th Cir. 2012) (citing

14   <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976)).  Plaintiff claims in

15   her reply brief that (1) any delay in her filing for her

16   preliminary injunction is negligible, (2) she is currently

17   experiencing emotional distress arising from her concern that the

18   school district will transition her children again without her

19   consent, and (3) she has demonstrated that there is a substantial

20   risk that the school district will apply the Regulation against

21   her children in the future, all of which also constitute

22   irreparable harm.  Reply at 7-9.

23     Defendants first argue that Plaintiff cannot establish that

24   there is a need for speedy action to protect her rights because

25   she waited nine months to seek injunctive relief after learning

26   of the Regulation being applied to her daughter A.S.  Opp'n at

27   20.  Defendants also note that A.S. has returned to identifying

28   as a girl despite the continuance of the Regulation so there can

10

1   be no clear showing of a likelihood of irreparable harm.  Id. at

2   20-21.  Defendants also contend that Plaintiff has failed to

3   establish an immediate threat; it is not enough that A.S. has

4   been harmed in the past or that Plaintiff's daughters continue to

5   reside in the school district for Plaintiff to meet her burden of

6   showing that injury is likely and immediate.  Id. at 21-22.

7        The Court find's Defendants' argument persuasive.  A party

8   "may not obtain a preliminary injunction unless they can show

9   that irreparable harm is likely to result in the absence of the

10  injunction."  Cottrell, 632 F. 3d, 1135.  "Indeed, suffering

11  irreparable harm prior to a determination of the merits is

12  perhaps the single most important prerequisite for the issuance

13  of a preliminary injunction."  See Nutrition Distribution LLC v.

14  Lecheek Nutrition, Inc., No. CV 15-1322-MWF (MRWx), 2015 WL

15  12659907 (C.D. Cal. June 5, 2015) (internal citations omitted).

16  A party requesting a preliminary injunction must "generally show

17  reasonable diligence."  Benisek v. Lamone, 201 L. Ed. 2d 398, 138

18  S. Ct. 1942, 1944 (2018).  A delay in seeking an injunction is

19  weighed against the moving party because an injunction is "sought

20  upon the theory that there is an urgent need for speedy action to

21  protect the [party's] rights."  Lydo Enterprises, Inc. v. City of

22  Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984); see also Oakland

23  Trib., Inc. v. Chron. Pub. Co., 762 F.2d 1374, 1377 (9th Cir.

24  1985) (stating that a "long delay before seeking a preliminary

25  injunction implies a lack of urgency and irreparable harm").  The

26  Court notes Plaintiff's nine-month delay in seeking injunctive

27  relief and finds that Plaintiff has demonstrated a lack of

28  urgency for action by the Court.  The Court also finds that

1   Plaintiff is seeking to enjoin the school district to actively

2   seek the informed consent of parents to socially transition their

3   children who express a transgender identity.  Thus, Plaintiff

4   seeks a mandatory injunction, which goes beyond a prohibitory

5   injunction's maintenance of the status quo and instead compels

6   the district to take affirmative action.  Doe v. Snyder, 28 F.4th

7   103, 111 (9th Cir. 2022).  The standard for a mandatory

8   injunction is high; it will not be granted unless extreme or very

9   serious damage will result and is "not issued in doubtful cases

10  or where the injury complained of is capable of compensation in

11  damages."  Id.  Plaintiff has not established a clear violation

12  of her constitutional rights, so she is not entitled to the

13  Court's favor under this factor absent a showing that extreme or

14  very serious harm is certain to result absent the injunction.

15  Plaintiff has failed to do so in this case.  Plaintiff's general

16  claims of emotional distress and fear that the district will

17  apply the Regulation against her children are vague and do not

18  rise to the level of certain "extreme or very serious" harm that

19  is required for the imposition of a mandatory injunction.  To the

20  contrary, Plaintiff has not demonstrated that there is any

21  immediate, irreparable harm that requires judicial intervention

22  at this time.

23                    c.   Factor Three: Balance of the Equities

24       Plaintiff argues that, in cases involving the deprivation of

25  constitutional rights, the balance of equities favors the

26  plaintiff unless the government can demonstrate that the

27  injunction will seriously hamper significant governmental

28  interests, which Defendants cannot do in this case.  MPI at 19.

1   Plaintiff also contends that there is no burden on the school

2   district to comply with her proposed order because schools would

3   still be permitted to socially transition students so long as

4   they obtain parental consent.  Id. at 19-20.

5        Defendants respond that the balance of equities favors the

6   school district because an injunction would force the district

7   to abandon enforcement of its established regulation and

8   jeopardize the privacy rights of its students.  Opp'n at 22.  On

9   the other hand, Plaintiff has no applicable constitutional right

10  that has been violated and any burden that Plaintiff feels about

11  not being aware of her daughter's gender identity is not due to

12  the school district, but due to A.S.'s own decision on whether

13  to disclose it to Plaintiff.  Id.

14       In exercising sound discretion, the Court "must balance the

15  competing claims of injury and consider the effect of granting

16  or withholding the requested relief," paying "particular regard

17  for the public consequences in employing the extraordinary

18  remedy of injunction."  Winter, 555 U.S. at 24.  The Court finds

19  that Defendants have demonstrated that the balance of equities

20  favors them, noting the burden on the school district to disrupt

21  the status quo and change its established regulation as well as

22  the potential burden on students who are currently benefiting

23  from the Regulation's protections.  Plaintiff has also failed to

24  make a showing that the balance of equities tips sharply in her

25  favor, as required under the serious questions test under Drakes

26  Bay, considering Plaintiff's failure to establish a likelihood

27  of success on the merits.  747 F.3d at 1085.

28  ///

1                    d.    Factor Four: Public Interest

2         Plaintiff argues that it is always in the public interest to

3   prevent the violation of a party's constitutional rights; in this

4   instance, Plaintiff has made a strong showing that the Regulation

5   violates her parental rights, so it is in the public interest to

6   grant her injunctive relief.  MPI at 20.  Plaintiff also claims

7   that the injunction will benefit all children and parents in the

8   district by protecting the intimate trust of the parent-child

9   relationship and reducing the psychological harm to children who

10  express different gender identities at home and school.  Id.

11        Defendants argue that there is no public interest to promote

12  when parents seek to gain unfettered access to information about

13  their child's gender identity, regardless of the wishes of the

14  student, nor is there a public interest in a parent forcing their

15  own beliefs on gender on their child against their will.  Opp'n

16  at 23.  To the contrary, there is an interest in creating a zone

17  of protection at schools in the rare circumstances where the

18  disclosure of a child's gender expression at school could lead to

19  harm from within their family.  Id.

20        Considering the Court's disposition on the other Winter

21  factors, it is not swayed one way or the other regarding the

22  public interest.  Both parties raise valid concerns.  It is not

23  necessarily a school's duty to act as an impenetrable barrier

24  between student and parent on intimate, complex topics like

25  gender expression and sexuality, particularly when students can

26  be as young as five years old.  On the other hand, granting

27  parents unimpeded access to and control over a student's personal

28  life can result in conflict that makes students feel vulnerable

                                  14

1   and unsafe both at home and at school, depending on their

2   parents' personal beliefs.  There are also practical concerns

3   about the enforceability of anti-harassment policies like the

4   Regulation, particularly in cases where a school could be

5   prevented from providing institutional support and protection for

6   certain marginalized identities because of parents' personal

7   beliefs.  However, these concerns are not dispositive in this

8   case and are better suited for deliberation by the legislature.

9

10                          IV.   ORDER

11      For the reasons set forth above, the Court DENIES

12   Plaintiff's motion for preliminary injunction.

13      IT IS SO ORDERED.

14   Dated: March 8, 2023

15

16   _____
     JOHN A. MENDEZ

17   SENIOR UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28