**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| AURORA REGINO, | No. 23-16031 |
| *Plaintiff-Appellant*, | D.C. No. 2:23-cv-00032-JAM-DMC |
| v. | |
| KELLY STALEY, Superintendent, | |
| *Defendant-Appellee*, | OPINION |
| and | |
| CAITLIN DALBY; REBECCA KONKIN; TOM LANDO; EILEEN ROBINSON; MATT TENNIS, | |
| *Defendants*. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted May 9, 2024
Pasadena, California

Filed April 4, 2025

Before:  Kim McLane Wardlaw, Morgan Christen, and
            Mark J. Bennett, Circuit Judges.

Opinion by Judge Christen

---

# SUMMARY[*]

---

## Due Process

The panel vacated the district court's dismissal of a complaint brought pursuant to 42 U.S.C. § 1983 by Aurora Regino, who challenged a Chico Unified School District policy under which the District began using Regino's child's new preferred name and pronoun without informing her.

Regino, raising facial and as-applied challenges, alleged that enforcement of the District's policy deprived her of her rights to both substantive and procedural due process. The district court dismissed the complaint on the basis that Regino failed to allege the existence of a fundamental right that was clearly established in existing precedent.

The panel held that the district court applied erroneous legal standards to the substantive and procedural due process claims. Addressing the as-applied substantive due process claim, the panel held that this court has never held that a plaintiff asserting a substantive due process claim must show that existing precedent clearly establishes the asserted fundamental right. Rather, the critical inquiry is whether an

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

asserted fundamental right is objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed.  The panel declined to undertake the proper analysis in the first instance because the parties failed to articulate the scope of their respective claims and defenses consistently during litigation.  The panel instructed the district court on remand to adopt a narrow definition of the interest at stake, carefully parse the District policy's terms, and apply existing precedent, which recognizes that the right of parents to make decisions concerning the care, custody and control of children is not unbounded.

Addressing Regino's as-applied procedural due process claim, the panel held that Regino need not have identified a fundamental right to establish a violation of her procedural due process rights.  Rather, procedural due process protects all liberty interests that are derived from state law or from the Due Process Clause itself.  The panel instructed the district court on remand to consider whether Regino adequately alleged the deprivation of a liberty interest, regardless of whether that interest is deemed fundamental.

Addressing Regino's facial claims, the panel noted that the district court did not address the distinction between facial and as-applied challenges.  Because the district court erred in its analysis of Regino's as-applied claims, its analysis of Regino's facial claims was flawed.  The panel therefore vacated the district court's dismissal and remanded.

## COUNSEL

Joshua W. Dixon (argued) and Eric A. Sell, Center for American Liberty, Mount Airy, Maryland; Harmeet K. Dhillon, Dhillon Law Group Inc., San Francisco, California; for Plaintiff-Appellant.

Jimmie E. Johnson (argued), Brian A. Duus, and Louis Leone, Leone Alberts & Duus APC, Corncord, California, for Defendant-Appellee.

Julie Veroff (argued), Deputy Solicitor General; Brian Bilford and Delbert Tran, Deputy Attorneys General; Laura Faer, Supervising Deputy Attorney General; Michael L. Newman, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, California Department of Justice, San Francisco, California; Philip J. Weiser, Colorado Attorney General, Office of the Colorado Attorney General, Denver, Colorado; William Tong, Connecticut Attorney General, Office of the Connecticut Attorney General, Hartford, Connecticut; Brian L. Schwalb, District of Columbia Attorney General, Office of the District of Columbia Attorney General, Washington, D.C.; Anne E. Lopez, Hawai'i Attorney General, Office of the Hawai'i Attorney General, Honolulu, Hawai'i; Kwame Raoul, Illinois Attorney General, Office of the Illinois Attorney General, Chicago, Illinois; Aaron M. Frey, Maine Attorney General, Office of the Maine Attorney General, Augusta, Maine; Anthony G. Brown, Maryland Attorney General, Office of the Maryland Attorney General, Baltimore, Maryland; Andrea J. Campbell, Commonwealth of Massachusetts Attorney General, Office of the Commonwealth of Massachusetts Attorney General, Boston, Massachusetts; Keith Ellison, Minnesota Attorney General, Office of the

Minnesota Attorney General, St. Paul, Minnesota; Matthew
J. Platkin, New Jersey Attorney General, Office of the New
Jersey Attorney General, Trenton, New Jersey; Letitia
James, New York Attorney General; Office of the New York
Attorney General, New York, New York; Ellen F.
Rosenblum, Oregon Attorney General, Office of the Oregon
Attorney General, Salem, Oregon; Peter F. Neronha, Rhode
Island Attorney General, Office of the Rhode Island
Attorney General, Providence, Rhode Island; Charity R.
Clark, Vermont Attorney General, Office of the Vermont
Attorney General, Montpelier, Vermont; Robert W.
Ferguson, Washington Attorney General, Office of the
Washington Attorney General, Olympia, Washington; for
Amici Curiae State(s) of California, Colorado, Connecticut,
District of Columbia, Hawai'i, Illinois, Maine, Maryland,
Massachusetts, Minnesota, New Jersey, New York, Oregon,
Pennsylvania, Rhode Island, Vermont, and Washington.

Peter M. Torstensen Jr., Deputy Solicitor General; Christian
B. Corrigan, Solicitor General; Austin Knudsen, Montana
Attorney General; Montana Department of Justice, Helena,
Montana; Steve Marshall, Alabama Attorney General,
Office of the Alabama Attorney General, Montgomery,
Alabama; Treg Taylor, Alaska Attorney General, Office of
the Alaska Attorney General, Fairbanks, Alaska; Tim
Griffin, Arkansas Attorney General, Office of the Arkansas
Attorney General, Little Rock, Arkansas; Ashley Moody,
Florida Attorney General, Office of the Florida Attorney
General, Tallahassee, Florida; Christopher M. Carr, Georgia
Attorney General, Office of the Georgia Attorney General,
Atlanta, Georgia; Raul R. Labrador, Idaho Attorney General,
Office of the Idaho Attorney General, Boise, Idaho;
Theodore E. Rokita, Indiana Attorney General; Office of the
Indiana Attorney General, Indianapolis, Indiana; Brenna

Bird, Iowa Attorney General, Office of the Iowa Attorney
General, Des Moines, Iowa; Kris Kobach, Kansas Attorney
General, Office of the Kansas Attorney General, Topeka,
Kansas; Jeff Landry, Louisiana Attorney General, Office of
the Louisiana Attorney General, Baton Rouge, Louisiana;
Lynn Fitch, Mississippi Attorney General, Office of the
Mississippi Attorney General, Jackson, Mississippi; Andrew
Bailey, Missouri Attorney General, Office of the Missouri
Attorney General, Jefferson City, Missouri; Michael T.
Hilgers, Nebraska Attorney General, Office of the Nebraska
Attorney General, Lincoln, Nebraska; Drew H. Wrigley,
North Dakota Attorney General, Office of the North Dakota
Attorney General, Bismarck, North Dakota; Dave Yost,
Ohio Attorney General, Office of the Ohio Attorney
General, Columbus, Ohio; Gentner F. Drummond,
Oklahoma Attorney General, Office of the Oklahoma
Attorney General, Oklahoma City, Oklahoma; Alan Wilson,
South Carolina Attorney General, Office of the South
Carolina Attorney General, Columbia, South Carolina;
Marty Jackley, South Dakota Attorney General, Office of the
South Dakota Attorney General, Pierre, South Dakota; Ken
Paxton, Texas Attorney General, Office of the Texas
Attorney General, Austin, Texas; Sean D. Reyes, Utah
Attorney General, Office of the Utah Attorney General, Salt
Lake City, Utah; Jason Miyares, Virginia Attorney General,
Office of the Virginia Attorney General, Richmond,
Virginia; Patrick Morrisey, West Virginia Attorney General,
Office of the West Virginia Attorney General, Charleston,
West Virginia; for Amici Curiae State(s) of Alabama,
Alaska, Arkansas, Florida, Georgia, Indiana, Iowa, Kansas,
Louisiana, Mississippi, Missouri, Montana, Nebraska, North
Dakota, Ohio, Oklahoma, South Carolina, South Dakota,
Texas, Utah, Virginia, and West Virginia.

Leonard B. Garfinkel, General Counsel, California Department of Education, Sacramento, California, for Amicus Curiae California Department of Education.

Theresa C. Witherspoon and Laura P. Juran, California Teachers Association, Burlingame, California; Glenn Rothner, Rothner Segall & Greenstone, Pasadena, California; for Amici Curiae California Teachers Association, California Federation of Teachers, California Association of School Psychologists, California Association of School Counselors, California School Nurses Organization, and California Association of School Social Workers.

Ilya Shapiro, Manhattan Institute, New York, New York, for Amici Curiae Manhattan Institute and Dr. Leor Sapir.

John A. Eidsmoe, Talmadge Butts, and Roy S. Moore, Foundation for Moral Law, Gallant, Alabama, for Amicus Curiae Foundation for Moral Law.

Jennifer W. Kennedy, Law Office of Jennifer W. Kennedy, Sierra Madre, California, for Amicus Curiae Our Duty.

Dean McGee and Emily Rae, Liberty Justice Center, Chicago, Illinois; Luke N. Berg and Richard M. Esenberg, Wisconsin Institute for Law & Liberty, Milwaukee, Wisconsin; for Amici Curiae Liberty Justice Center, Wisconsin Institute for Law & Liberty, and Dr. Erica E. Anderson, PhD.

Katherine L. Anderson and David A. Cortman, Alliance Defending Freedom, Scottsdale, Arizona; John J. Bursch, Vincent M. Wagner, and Matthew C. Ray, Alliance Defending Freedom, Lansdowne, Virginia; for Amicus Curiae The Justice Foundation.

Amy Whelan and Shannon Minter, National Center for Lesbian Rights, San Francisco, California, for Amicus Curiae Professors of Psychology & Human Development.

Jean Strout and Kamala Buchanan-Williams, National Center for Youth Law, Oakland, California, for Amicus Curiae National Center for Youth Law.

Jennifer L. Chou and Elizabeth O. Gill, ACLU Foundation of Northern California, San Francisco, California; Amanda Goad, Ariana Rodriguez, and Christine Parker, ACLU Foundation of Southern California, Los Angeles, California; Harper Seldin, American Civil Liberties Union Foundation, New York, New York; for Amici Curiae American Civil Liberties Union, American Civil Liberties Union of Northern California, and American Civil Liberties Union of Southern California.

Jeffrey M. Gutkin, Cooley LLP, San Francisco, California; Urvashi Malhotra, Cooley LLP, Palo Alto, California; Karen L. Loewy, Lambda Legal Defense and Education Fund, Inc., Washington, D.C.; Paul D. Castillo, Lambda Legal Defense and Education Fund, Inc., Dallas, Texas; for Amici Curiae Lambda Legal Defense and Education Fund, Inc., GLBTQ Legal Advocates & Defenders, The Trevor Project, Inc., Pflag, Inc., Equality California, Inc., Courage California, Rainbow Pride Youth Alliance, Sacramento LGBT Community Center, and Legal Services of Northern California.

## OPINION

CHRISTEN, Circuit Judge:

Aurora Regino's minor child is a student in the Chico Unified School District. Consistent with a District policy, the District began using the child's new preferred name and pronouns without informing Regino. Regino challenged the policy in district court, raising as-applied and facial claims and arguing that enforcement of the policy deprived her of substantive and procedural due process. The district court dismissed Regino's complaint. Because the district court applied erroneous legal standards to the substantive and procedural due process claims, we vacate and remand.

### I

### A

This appeal concerns the Chico Unified School District's Administrative Regulation #5145.3 (the "Policy"). The Policy was developed, adopted, and implemented by Superintendent Kelly Staley, or her predecessor, and it applies to all schools within the District.[1] The Policy

---

[1] These facts are derived from the allegations in Regino's complaint. With respect to the Policy, Staley asserts that the District based the Policy on a sample regulation circulated by the California School Boards Association in accordance with directives issued by the California Department of Education ("CDE"). According to Staley, the CDE issued its directives in the form of a list of "Frequently Asked Questions" and did so to provide guidance for complying with California Assembly Bill No. 1266 (2013), which, *inter alia*, prohibits California public schools from discriminating on the basis of gender, gender identity, and gender expression. Although the State of California and the CDE appeared as *amici curiae* in this appeal, they are not parties. Neither the precise

"prohibits acts of verbal, nonverbal, or physical aggression, intimidation, or hostility that are based on sex, gender identity, or gender expression, or that have the purpose or effect of producing a negative impact on the student's academic performance or of creating an intimidating, hostile, or offensive educational environment, regardless of whether the acts are sexual in nature." Prohibited conduct includes "[r]efusing to address a student by a name and the pronouns consistent with the student's gender identity," and "[r]evealing a student's transgender status to individuals who do not have a legitimate need for the information, without the student's consent."

The Policy requires that the District "address each situation" concerning transgender or gender-nonconforming students "on a case-by-case basis, in accordance with [certain] guidelines." Three such guidelines are relevant to this appeal. First, a "Compliance Officer shall accept the student's assertion of his/her gender identity and begin to treat the student consistent with that gender identity."[2] Second, "[i]f a student so chooses, district personnel shall be required to address the student by a name and the pronoun(s) consistent with the student's gender identity, without the necessity of a court order or a change to the student's official district record."[3] Third, "the district shall only disclose" a

origin of the Policy, nor its relationship to any state-level legislation or regulation, is at issue in this appeal.

[2] A Compliance Officer need not accept a student's assertion of his or her gender identity if "district personnel present a credible and supportable basis for believing that the student's assertion is for an improper purpose."

[3] The Policy states that "inadvertent slips or honest mistakes . . . will, in general, not constitute a violation of this administrative regulation."

student's transgender or gender-nonconforming status to others "with the student's prior written consent, except when the disclosure is otherwise required by law or when the district has compelling evidence that disclosure is necessary to preserve the student's physical or mental well-being."

**B**

Regino is the single mother of two minor daughters, A.S. and C.S., both of whom attend schools in the District. During the 2021-22 school year, A.S. attended fifth grade at Sierra View Elementary School. In the fall of 2021, when A.S. was eleven years old, A.S. began to feel depressed and anxious. She had experienced significant changes in her home life during the preceding months, such as the death of her grandfather and Regino's completion of treatment for breast cancer.

Throughout the 2021-22 school year, a school counselor at Sierra View visited A.S.'s class on a regular basis to remind students about the services provided by the counselor's office. During these visits, the counselor addressed issues of gender identity and sexuality. In December 2021, A.S. began to feel like she might be a boy. Around that time, A.S. met with the counselor to discuss her anxiety and depression, but did not discuss her feelings about her gender identity.

In early 2022, A.S. visited the counselor and told her that she "felt like a boy." The counselor asked A.S. whether she would like to go by a different name, and whether she would prefer to be addressed with male pronouns. A.S. responded that she would prefer male pronouns and to be addressed as "J.S." The counselor asked A.S. if she would like her mother to be notified. A.S. responded that she did not want her mother to know because she feared Regino would be mad at

her. At the end of the visit, the counselor walked A.S. to her classroom and informed the teacher that A.S. was now going by "J.S." and male pronouns. The teacher began referring to A.S. in this manner. The counselor also arranged for other school personnel to refer to A.S. as "J.S." and with male pronouns.

In the spring of 2022, the counselor and A.S. met on two other occasions. During these meetings, the counselor provided A.S. with information about a local community group that advocated for LGBTQ+ causes and also discussed "top surgery" and "breast binding." During one of the meetings, A.S. told the counselor she wanted to tell her mother about her new gender identity. The counselor encouraged A.S. to speak with other family members first before telling her mother. In April 2022, A.S. told her grandmother about her gender identity, and A.S.'s grandmother promptly told Regino.

Regino was surprised to learn of A.S.'s new gender identity and to hear that District personnel had been referring to A.S. as J.S., and with male pronouns, without informing Regino. Regino let A.S. know that she supported her and would assist in her transition, if that was what A.S. wanted. Regino arranged for A.S. to begin counseling sessions to discuss her depression and anxiety.

In April 2022, Regino contacted the school to report that the counselor and other personnel had not told her that they had begun to refer to A.S. by a different name and with male pronouns. Regino alleges that if she had been "involved in the process, she would not have allowed Sierra View to socially transition her daughter without first seeking guidance from a mental health professional." Regino raised her concerns with the District, and after several discussions

and meetings with various District employees, Regino met with Staley in October 2022. During that meeting, Regino sought assurances that what happened with A.S. would not happen again with A.S. or with Regino's younger daughter, C.S. At that time, Regino learned about the Policy.

Meanwhile, over the spring and summer of 2022, A.S.'s feelings about being a boy subsided. As of the time the operative complaint was filed, A.S. identified as a girl and remained in counseling for depression and anxiety. The complaint alleges that C.S. began exhibiting traits and behaviors that make her likely to seek to identify as a boy as she gets older.

**C**

In January 2023, Regino filed a complaint in federal court against Staley, seeking a declaration invalidating the Policy as violative of Regino's constitutional rights and an injunction against enforcement of the Policy.[4] She also filed a motion for a preliminary injunction, which the district court denied.

In March 2023, in response to a motion to dismiss, Regino filed a First Amended Complaint. That complaint, which is the operative complaint, contains six claims raised pursuant to 42 U.S.C. § 1983: (1) a facial substantive due process challenge; (2) an as-applied substantive due process challenge; (3) a facial procedural due process challenge; (4) an as-applied procedural due process challenge; (5) a facial First Amendment familial association challenge; and

---

[4] Regino's original complaint named, in addition to Staley, individual members of the District's Board of Education. The district court dismissed these defendants and Regino does not appeal that ruling.

(6) an as-applied First Amendment familial association challenge.

Regino alleges that the Policy amounts to a "[s]ecrecy [p]olicy," whereby school personnel "(1) socially transition any student who claims to have a transgender identity and asks to be socially transitioned in the school environment and (2) keep the social transitioning secret from the student's parents unless the student specifically authorizes parental notification." Regino asserts that social transitioning is "the active affirmation of a person's transgender identity." According to Regino, social transitioning in the school setting "primarily refers to calling the student by a new name associated with their transgender identity and referring to the student by pronouns associated with their transgender identity." This social transitioning, Regino alleges, is "a significant form of psychological treatment." Regino contends that enforcement of the Policy infringes her constitutional rights because it requires District personnel to socially transition her children without notice to her or her consent.

In April 2023, Staley again moved to dismiss. The district court granted the motion in full. The court reasoned that Regino had failed to allege the existence of a fundamental right that was clearly established in existing precedent and denied leave to amend on the ground that amendment would be futile. Regino timely appealed.

## II

We review de novo a district court's order granting a motion to dismiss. *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1203 (9th Cir. 2005).

## III

"To prevail under 42 U.S.C. § 1983, a plaintiff must prove that he was 'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).

The Fourteenth Amendment's Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  This clause "'protects individuals against two types of government action': violations of substantive due process and procedural due process." *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  Here, Regino alleges that Staley deprived her of her rights to both substantive and procedural due process.

Regino raises facial and as-applied challenges premised on each of these rights.  Generally, "a facial challenge is a challenge to an entire legislative enactment or provision." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). An as-applied challenge, on the other hand, "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others."  *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted). We first address Regino's as-applied claims, and then turn to her facial claims.

## A

### 1

We begin with substantive due process. Substantive due process protects individuals from state action that interferes with fundamental rights. *See Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008). Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993); *see also Fields*, 427 F.3d at 1208.[5] On the other hand, "[l]aws that do not infringe a fundamental right survive substantive-due-process scrutiny so long as they are 'rationally related to legitimate government interests.'" *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)).

To assess whether there has been a violation of a fundamental right, we begin with "a 'careful description' of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721; *see also Stormans*, 794 F.3d at 1085-86. With

---

[5] The Supreme Court has applied two different legal standards to substantive due process claims. *Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003) (per curiam); *see also Chavez v. Martinez*, 538 U.S. 760, 787 (2003) (Stevens, J., concurring in part and dissenting in part); *Matsuda v. City & County of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008). One is the "fundamental rights" standard we apply here. The other is the "shocks the conscience" standard, under which deliberate government action violates the Fourteenth Amendment if it is "arbitrary" and "unrestrained by the established principles of private right and distributive justice." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citation omitted). Because Regino asserts a violation of her substantive due process rights solely under a fundamental rights theory, we do not address the shocks-the-conscience standard and express no opinion on its applicability.

that careful description in mind, we must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." *Khachatryan v. Blinken*, 4 F.4th 841, 858 (9th Cir. 2021) (quoting *Glucksberg*, 521 U.S. at 720-21); *see also Stormans*, 794 F.3d at 1087.

Supreme Court precedent instructs us "to 'exercise the utmost care' before 'breaking new ground' in the area of unenumerated fundamental rights." *Khachatryan*, 4 F.4th at 856 (alteration accepted) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Such caution is warranted because the "guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." *Glucksberg*, 521 U.S. at 720 (quoting *Collins*, 503 U.S. at 125); *see also Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 239-40 (2022) (noting that substantive due process has sometimes been "a treacherous field" that has "led the Court to usurp authority that the Constitution entrusts to the people's elected representatives" (citation omitted)). Thus, any new fundamental rights must typically "be defined in a most circumscribed manner, with central reference to specific historical practices." *Khachatryan*, 4 F.4th at 856 (quoting *Obergefell v. Hodges*, 576 U.S. 644, 671 (2015)).

**2**

In the district court, Regino argued that the District's Policy violated her fundamental rights. Regino did not precisely identify her asserted fundamental rights in her operative complaint, but she broadly asserted in briefing on the District's motion to dismiss that the Policy infringed:

(i) her right to make medical decisions for her children, (ii) her right to make important decisions in the lives of her children that go to the heart of parental decision-making, and (iii) her right to maintain familial integrity and association.**[6]**

Regino contends that these asserted rights are encapsulated within the deep-rooted "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion); *see also Meyer v. Nebraska*, 262 U.S. 390, 402 (1923); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35 (1925). But this broad parental right is not absolute; it must "bow to other countervailing interests and rights, such as the basic independent life and liberty rights of the child and of the State acting as *parens patriae*." *Mueller v. Auker*, 700 F.3d 1180, 1186 (9th Cir. 2012); *see also Fields*, 427 F.3d at 1204. Because limitations on this general right circumscribe its scope and delineate its contours, "identifying a general parental right is far different than concluding that it has been infringed." *Hooks v. Clark Cnty. Sch. Dist.*, 228 F.3d 1036, 1042 (9th Cir. 2000).

Courts have recognized that parental rights are confined by the interests of the State. For instance, although the right

---

[6] Courts have not been "entirely clear regarding the source of the right" to familial association and have "variously relied on the Fourteenth, First, and Fourth Amendments." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018). Here, Regino purports to raise familial association claims under the rubrics of both substantive due process and the First Amendment. However, the parties agree that in this particular scenario, Regino's familial association claims under the First Amendment are entirely subsumed within her familial association claims premised on substantive due process. Accordingly, we do not separately address her First Amendment claims.

of parents to make decisions concerning the care, custody, and control of their children encompasses the right of parents to make important medical decisions for their children, that right is not unlimited. *See Parham v. J.R.*, 442 U.S. 584, 603-04 (1979); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). States have required compulsory vaccination for children. *Prince*, 321 U.S. at 166. In some circumstances, states may also perform medical treatments, such as blood transfusions, over parents' objections and contrary to parents' expressed beliefs. *Jehovah's Witnesses v. King Cnty. Hosp. Unit No. 1 (Harborview)*, 278 F. Supp. 488, 504 (W.D. Wash. 1967) (three-judge panel), *aff'd*, 390 U.S. 598 (1968) (per curiam); *see also Pickup v. Brown*, 740 F.3d 1208, 1236 (9th Cir. 2014) (noting that parents cannot compel a state to accept their views "of what therapy is safe and effective for minors").

Here, the district court concluded that Regino failed to adequately allege the existence of a cognizable fundamental right, but failed to conduct the proper analysis. Understandably cautious about improperly expanding substantive due process rights, the court borrowed a standard from the qualified immunity context and reasoned that a fundamental right is not sufficiently cognizable unless the right has been "clearly established," such that existing precedent places it "beyond debate." *See David v. Kaulukukui*, 38 F.4th 792, 800 (9th Cir. 2022) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). Because existing precedent did not expressly address Regino's articulation of her asserted fundamental rights, the district court held that the rights she asserted were not fundamental. This was error. We have never held that a plaintiff asserting a substantive due process claim must show that existing precedent clearly establishes the asserted

fundamental right, and we see no reason to import this standard now.

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *White v. Pauly*, 580 U.S. 73, 78-79 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).  In the qualified immunity context, a right is considered clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  This standard ensures that immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The qualified immunity framework does not govern the merits of substantive due process claims, where the critical inquiry is whether an asserted fundamental right is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed."   *Khachatryan*, 4 F.4th at 858 (quoting *Glucksberg*, 521 U.S. at 720-21).  Indeed, a right need not have been expressly recognized as fundamental in caselaw for it to be deeply rooted in our history and tradition and implicit in the concept of ordered liberty.  Although we must be "reluctant to expand the concept of substantive due process" and must "exercise the utmost care" before breaking new ground, the substantive due process framework does not require a right to have been clearly established by existing precedent. *Glucksberg*, 521 U.S. at 720.

The district court imposed the qualified immunity standard instead of applying the established test for determining whether an asserted right is fundamental. Because this placed an improper burden on Regino, this portion of the district court's order cannot stand.

**3**

Having concluded that the district court erred in its analysis, we must decide whether to undertake the proper analysis in the first instance. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals."). Both parties urge us to reach the question whether Regino has adequately alleged the infringement of her fundamental rights, but because the parties have failed to consistently articulate the scope of their respective claims and defenses, remand is required.

Regino's characterization of her asserted fundamental rights has shifted over the course of this litigation. In her complaint, Regino loosely invoked general parental rights. In response to the District's motion to dismiss, she invoked three nebulous rights that had been mentioned in prior cases. On appeal, Regino's position continued to evolve. For instance, in her briefing to our court, Regino asserted a broad right to control—*i.e.*, including the right to grant or withhold consent—any "psychological treatment" the State provides her children, regardless of whether her child seeks that treatment. Regino also argued in her briefing that schools have an affirmative obligation to notify parents about their children's preferred gender identity. But at oral argument before our court, Regino narrowed these positions. She conceded that her parental rights do not encompass the right

to invade her child's relationship with a counselor or therapist, and that a teacher's knowledge of a child's transgender status does not trigger an affirmative obligation to notify the child's parents. Regino suggested at oral argument that her fundamental rights were implicated only by the District's creation of an environment in which a student's transgender identity is affirmed—*e.g.*, where a counselor informs other faculty members to address a student using a new name or pronouns.

These shifts in position are problematic because they undermine the critical requirement that we begin the substantive due process analysis with a "careful description" of the asserted fundamental right. *Glucksberg*, 521 U.S. at 721; *see also Collins*, 503 U.S. at 125.[7] To be sure, there is undoubtedly a "fundamental right of parents to make decisions concerning the care, custody, and control of their children," *Troxel*, 530 U.S. at 66, but even Regino acknowledges that there are important limitations on that right, *see Fields*, 427 F.3d at 1204. With only a vague, protean conception of the right Regino is asserting, it is

---

[7] Regino argues that the "careful description" requirement applies only to determine the existence of a new fundamental right, and not to analyze whether an asserted right is encompassed within a fundamental right that has been previously recognized. The Supreme Court has not embraced this limitation, and has instead stated without qualification: "[W]e have required in substantive-due-process cases 'a careful description' of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721; *see also id.* at 722 ("[W]e have a tradition of carefully formulating the interest at stake in substantive-due-process cases."); *Raich v. Gonzales*, 500 F.3d 850, 863-64 (9th Cir. 2007); *Stormans*, 794 F.3d at 1085-86. Regardless of whether a right has been previously recognized in judicial precedent, the critical question is whether the asserted right is "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty." *Glucksberg*, 521 U.S. at 720-21.

difficult to discern whether that right is properly recognized as "fundamental." Thus, on remand, it will be critical that Regino clearly and consistently articulate the right or rights she is actually asserting.

Like Regino, Staley has failed to consistently identify the District's justifications for its Policy. For example, Staley argued in her briefing on appeal that minor children have the same informational privacy interests in their gender identity as adults. At oral argument, counsel for Staley took the position that any student, regardless of age, could "trigger" the Policy, and that the terms of the Policy make no distinction between children who are six and those who are seventeen. But Staley retreated from this unqualified position at another point in the argument, and emphasized that the Policy subjects a minor child's decision about the disclosure of his or her private information to "an adult surrogate review" to determine whether disclosure is in the best interest of the child.

The district court had no opportunity to address the parties' revamped arguments. In this circumstance, "it is normally inappropriate for us to evaluate the argument in the first instance." *Shirk v. United States ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014). Thus, given the meaningful changes in the parties' respective positions, we conclude that the best course is to vacate and remand. *Detrich v. Ryan*, 740 F.3d 1237, 1248-49 (9th Cir. 2013) (en banc) (noting that a "standard practice . . . is to remand to the district court for a decision in the first instance without requiring any special justification for so doing"), *overruled in part on other grounds by Shinn v. Ramirez*, 596 U.S. 366 (2022). This will permit the district court to conduct the proper analysis in the first instance. *See Shirk*, 773 F.3d at 1007 ("As a federal court of appeals, we must always be

mindful that 'we are a court of review, not first view.'"
(quoting *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658
F.3d 1038, 1043 n.4 (9th Cir. 2011))); *see also Ecological
Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th
Cir. 2000) (noting reasons that "[o]ur judicial system
generally assumes that consideration of an issue at both the
trial court and appellate court level is more likely to yield the
correct result").

### 4

#### a

On remand, the district court shall consider whether
Regino has alleged the infringement of a fundamental right.
To do so, it should follow the "established method" of
substantive due process analysis. *Glucksberg*, 521 U.S. at
720.

This analysis begins by "carefully formulating" the
asserted fundamental right. *Id.* at 722. This will require the
court to examine Regino's articulation of the particular
fundamental right she asserts. *See Collins*, 503 U.S. at 125
(noting that "[i]t is important . . . to focus on the allegations
in the complaint to determine how petitioner describes the
constitutional right at stake"). In conducting its analysis, the
court must eschew sweeping generalizations, and instead
"adopt a narrow definition of the interest at stake." *Raich*,
500 F.3d at 863; *see also Khachatryan*, 4 F.4th at 857-58.

The Supreme Court has repeatedly rejected broad
formulations of asserted fundamental rights, in favor of
being "more precise." *Glucksberg*, 521 U.S. at 723. For
example, rather than examining a generic "right to die," the
Supreme Court identified the "constitutionally protected
right to refuse lifesaving hydration and nutrition." *Cruzan*

*ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 277-79 (1990). Similarly, in *Flores*, the Supreme Court rejected the plaintiffs' characterization of the right to "freedom from physical restraint" as too generalized, and instead addressed "the alleged right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." 507 U.S. at 302; *see also Raich*, 500 F.3d at 864 (accepting the plaintiff's "careful statement" of the right to "mak[e] life-shaping medical decisions that are necessary to preserve the integrity of her body, avoid intolerable physical pain, and preserve her life" only after specifically including "the use of marijuana" as central to the proposed right (alteration in original)).

To formulate the asserted fundamental right on remand, the district court must consult "both the scope of the challenged regulation and the nature of [Regino's] allegations." *Stormans*, 794 F.3d at 1085. This will require reconciling discrepancies between the parties' assertions in their pleadings, in their briefing, and in the positions they advanced at argument. For example, it will be important for Regino to clarify whether she asserts a right to decide whether the District may engage in what she deems social transitioning, or whether she asserts only a right to notification if such social transitioning occurs. The court should also clarify what information Regino argues District personnel are required to disclose, and what Regino asserts as the triggering event for any purported obligation of the District to affirmatively provide parental notification.

Pursuant to *Stormans*, *id.*, the district court must also closely examine the details of the challenged Policy,

including, for example, the circumstances under which it allows or requires the District to inform a parent of a student's transgender or gender-nonconforming status. At oral argument, counsel disagreed about whether the Policy necessarily requires consideration of factors such as the student's age. Staley insisted that although the Policy does not require that District personnel make a "best interests" determination, any evaluation would undoubtedly consider factors such as the student's age and stated reasons for preferring non-disclosure to determine what is in the student's best interest. Regino countered that the Policy requires the District to presumptively assent to a student's desire to withhold information unless there are compelling reasons to do otherwise that relate to the student's "physical or mental well-being." In Regino's view, the Policy is not neutral; it favors non-disclosure. We leave it to the district court to carefully parse the Policy's terms on remand.

**b**

After formulating the asserted fundamental right, the district court must consider whether the asserted right itself, or one in which it is encompassed, is "objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." *Id.* at 1087 (quoting *Glucksberg*, 521 U.S. at 720-21); *see also Fields*, 427 F.3d at 1204. Thus far, both parties have advanced unqualified positions that are unsupported by precedent: Regino has suggested that parental rights are nearly unlimited, and the District has insisted that a child's right to make decisions is nearly unrestricted. Neither is the case. On remand, the district court will be able to conduct a nuanced assessment of existing precedent concerning fundamental rights for parents. *See Glucksberg*, 521 U.S. at

721 (noting that "[o]ur Nation's history, legal traditions, and practices . . . provide the crucial 'guideposts for responsible decisionmaking'" (quoting *Collins*, 503 U.S. at 125)). Here, we briefly identify some of the important decisional guideposts for the district court's inquiry.

The Supreme Court has long recognized "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66. Courts often refer to this right as the "*Meyer-Pierce* right because it finds its origin in two Supreme Court cases": *Meyer* and *Pierce*. *Fields*, 427 F.3d at 1204; *see also Parents for Privacy v. Barr*, 949 F.3d 1210, 1229 & n.14 (9th Cir. 2020). *Meyer* and *Pierce* both involved parents that sought to send their children to private school in violation of state law. In *Meyer*, the Supreme Court recognized the right of parents to "establish a home and bring up children" and "to control the education of their own." *Meyer*, 262 U.S. at 399-401. In *Pierce*, the Court acknowledged that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." *Pierce*, 268 U.S. at 534-35. The Supreme Court has since reaffirmed parents' fundamental right to make decisions concerning the care, custody, and control of their children in the context of cases involving, for example, custody termination, *Stanley v. Illinois*, 405 U.S. 645, 651 (1972), a child's voluntary commitment, *Parham*, 442 U.S. at 602, and compulsory secondary education, *Wisconsin v. Yoder*, 406 U.S. 205, 213-14 (1972). *See also Troxel*, 530 U.S. at 66 (collecting cases).

But the right to "make decisions concerning the care, custody, and control" of children, *Troxel*, 530 U.S. at 66, "is not without limitations." *Fields*, 427 F.3d at 1204; *see also Lehr v. Robertson*, 463 U.S. 248, 256 (1983) (noting that

parental rights "are sufficiently vital to merit constitutional protection in appropriate cases"). The right does not reside exclusively with parents and is subject to regulation by the State "in the public interest." *Fields*, 427 F.3d at 1204 (alterations accepted) (quoting *Prince*, 321 U.S. at 166); *see also Hooks*, 228 F.3d at 1042. Several well-established limitations may bear on Regino's claims.

As already noted, the right of parents to make important medical decisions for their children is not unbounded. *See Parham*, 442 U.S. at 603-04. States may, under some circumstances, compel vaccination or medical treatments, even over parents' objections. *Prince*, 321 U.S. at 166-167; *Jehovah's Witnesses*, 278 F. Supp. at 504. Similarly, in the education context, *Meyer* and *Pierce* have been cabined. The Supreme Court has "stressed the 'limited scope of *Pierce*,' . . . which simply 'affirmed the right of private schools to exist and to operate.'" *Runyon v. McCrary*, 427 U.S. 160, 177 (1976) (citation omitted). As a general matter, "parents have the right to choose the educational forum, but not what takes place inside the school." *Cal. Parents for the Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010, 1020 (9th Cir. 2020). Parents "lack a constitutional right to direct the curriculum that is taught to their children," and "also lack constitutionally protected rights to direct school administration more generally." *Parents for Privacy*, 949 F.3d at 1231; *see also Fields*, 427 F.3d at 1205 (collecting cases).

These precedents and others will guide the district court's analysis on remand.

**B**

We next address Regino's as-applied procedural due process claim. Because we conclude that the district court erred in its analysis, we vacate and remand.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 972 (9th Cir. 2015) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)). Thus, to state a claim, Regino must first allege that she "has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs.*, 526 U.S. at 59 (quoting U.S. Const. amend. XIV). If she adequately alleges such a deprivation, we must ask "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Am. Civ. Liberties Union of Nev. v. Masto*, 670 F.3d 1046, 1058 (9th Cir. 2012) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

The district court concluded that Regino's procedural due process claim failed because she did not "allege sufficient facts to establish that her fundamental parental rights extend to the circumstances of the instant case." In the district court's view, Regino's failure to adequately allege a fundamental right in support of her substantive due process claims necessarily foreclosed her procedural due process claims. This was error because the "procedural component of the Due Process Clause protects more than just fundamental rights." *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995); *see also Brittain v. Hansen*, 451 F.3d 982, 1000 (9th Cir. 2006) (noting that "[p]rocedural due process is not limited to interests which are 'fundamental'" and, unlike substantive due process, does not raise "concerns

of unbounded discretion and judicial supremacy"). Rather, procedural due process "protects all liberty interests that are derived from state law or from the Due Process Clause itself." *Mullins*, 57 F.3d at 795. Accordingly, Regino need not have identified a fundamental right to establish a violation of her procedural due process rights.

We vacate and remand for the district court to conduct a procedural due process analysis in the first instance. *See Shirk*, 773 F.3d at 1007. On remand, the district court shall consider whether Regino adequately alleged the deprivation of a liberty interest, regardless of whether that interest is deemed fundamental.

**C**

Regino also raises facial claims, and the foregoing analysis applies to those claims as well.

Generally, "a plaintiff cannot succeed on a facial challenge unless he 'establishes that no set of circumstances exists under which the law would be valid,' or he shows that the law lacks a 'plainly legitimate sweep.'" *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (alterations accepted) (citations omitted).**[8]**   Whether a challenge is

---

[8] In the First Amendment context, a less demanding standard applies. *See Moody*, 603 U.S. at 723. There, a "restriction on speech is facially overbroad if . . . 'a substantial number of its applications are unconstitutional, judged in relation to the provision's plainly legitimate sweep.'" *Hernandez v. City of Phoenix*, 43 F.4th 966, 980 (9th Cir. 2022) (alterations accepted) (citation omitted). This standard "provides breathing room for free expression," as "[o]verbroad laws 'may deter or chill constitutionally protected speech.'" *United States v. Hansen*, 599 U.S. 762, 769-70 (2023) (quotation marks and citation omitted). Although Regino nominally raises a First Amendment claim, she concedes that it is coextensive with her substantive due process claim,

"facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy.'"   *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (citation omitted). Regardless of the type of challenge, however, the underlying constitutional standard remains the same.   *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010).

Here, the district court concluded that Regino's as-applied and facial claims failed for the same reasons and expressly noted that the underlying constitutional standard did not differ.   The court did not address the distinction between facial and as-applied challenges.   Because we conclude that the district court erred in its analysis of Regino's as-applied claims, its analysis of Regino's facial claims was flawed.   We therefore vacate the district court's dismissal and remand.

## IV

We vacate the district court's judgment and remand for further proceedings consistent with this opinion.**⁹**

---

and does not argue that the more relaxed First Amendment standard for facial challenges applies here.

⁹ Regino requests (Dkt. 8) that we take judicial notice of court filings, government records, and a journal article.   Because this motion is unopposed and the materials are judicially noticeable, this motion is **GRANTED**.   *See* Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012).   Regino also requests (Dkt. 97) that we take judicial notice of a report about gender identity services from the United Kingdom's National Health Service.   Staley opposes this request.   Because the statements made in the report are disputed, this motion is **DENIED.**   *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90

**VACATED AND REMANDED.**[10]

---

(9th Cir. 2001).  *Amicus Curiae* Our Duty's motion for leave to file a
supplemental letter brief (Dkt. 112) is **GRANTED.**

[10] The parties shall bear their costs of appeal.